FILED
2013 Jan-31  PM 04:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY JERNIGAN                  }
                               }
       Plaintiff,              }
                               }        CIVIL ACTION NO.
v.                             }        2:11-CV-01448-WMA
                               }
DOLLAR GENERAL CORPORATION,    }
                               }
       Defendant.              }


**<u>MEMORANDUM OPINION</u>**

Before the court is the motion of defendant, Dollar General Corporation ("Dollar General"), for summary judgment seeking dismissal of the above-entitled action brought by its former employee, Mary Jernigan ("Jernigan"). Jernigan initially alleged that she was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and that she was retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* Jernigan has now conceded her retaliation claim. For the reasons set forth below, Dollar General's motion for summary judgment as to the ADEA claim will be granted.

**Facts[1]**

**Background Information**

Dollar General hired Jernigan as a cashier on January 20,

---

[1] Because of the procedural posture, all admissible evidence is viewed in the light most favorable to Jernigan.

2006, when she was 46 years old. In other words, she was already in the age group protected by the ADEA when Dollar General hired her. On September 29, 2007, she was promoted to "lead sales associate", or "third key manager," a position that ranks below manager and assistant manager but that performs some of the managerial duties like counting down the drawers and making deposits. Third key managers are not paid as much as managers, but they are paid more than cashiers. On April 12, 2008, Jernigan was transferred to Store #9861, where she worked as a third key manager until her termination on or about July 6, 2009. Beginning on April 15, 2009, Kati Merchant ("Merchant") was the district manager over Jernigan's store and other stores. Throughout Jernigan's employment at Store # 9861, Leila Atchley ("Atchley") was the store manager, and Faye Young ("Young") was the assistant manager. There is no evidence of a pattern or practice by Dollar General of discrimination against persons over 40 years of age.

**April 25, 2009 Cash Shortage**

On April 25, 2009 Jernigan and Young were the two employees who closed Store # 9861 and had access to cash in the safe. The following day, Atchley opened the store and noticed that the safe was short $30.00. When Jernigan and Young arrived that afternoon, Atchley asked them about the shortage. Atchley then informed Merchant of the shortage and Merchant directed her to discipline both Jernigan and Young. Following Merchant's instruction, Atchley

issued Jernigan and Young each a write-up.[2]

**June 25, 2009 Cash Shortage**

On June 25, 2009, Jernigan prepared the 3:30 P.M. deposit for the store. She counted each of the two cash registers twice, removed all cash in excess of $100.00 from each cash register, placed the cash in a deposit bag, and sealed the bag. She then took the bag to a Wachovia branch bank where she gave the bag to a teller who brought her a receipt that reflected the deposit total that Jernigan had counted, namely $1313.58. Jernigan then returned to the store and gave the deposit slip to Atchley, who recorded the deposit of $1313.58 on the General Deposit Log. The following day, Wachovia sent Dollar General a Debit Memo indicating that the June 25, 2009 deposit was $150.00 short.

Jackson Trawick ("Trawick"), Dollar General's Loss Prevention Manager for Alabama, was summoned to work with Merchant to investigate the June 25, 2009 cash shortage. Trawick recommended to Merchant that she suspend Jernigan pending the outcome of the investigation. Merchant informed Jernigan that she was suspended until July 6, 2009, but did not explain why.

As part of the investigation, Merchant went to the Wachovia branch where Jernigan made the deposit and talked with the Branch Manager regarding Wachovia's internal investigation of the

---

[2] Jernigan refused to sign her write-up because she denied that she was responsible for the missing funds. However, she does not deny that she was held responsible for it and received the write-up.

shortage. Trawick also interviewed Jernigan himself and performed other investigatory activities such as reviewing all of the documents. Jernigan claims that Dollar General failed to fully investigate the incident because Trawick did not interview Atchley, and because Trawick did not remember reviewing video footage of Jernigan preparing the deposit. What any such video footage would show is not reflected in the record. While talking to the Wachovia Branch Manager, Merchant did not ask the name of the teller who handled the money, did not speak with the teller, and did not ask if the bank's video showed that the bag was sealed when the teller opened it. However, nothing in the record suggests that Trawick or Merchant departed from normal investigatory procedures.

Trawick determined what he thought the pertinent facts to be and submitted them to HR. With Trawick's determination of the facts, Larry Christopher Hicks ("Hicks"), Dollar General's Field Employee Relations Manager recommended to Merchant that she terminate Jernigan. Dollar General contends that Trawick and Merchant in good faith reached the conclusion that Jernigan was the last person to handle the deposit before the shortage appeared and that when she counted the money, placed it in a deposit bag, sealed the bag, took it to the bank, and made the deposit, she became "responsible" for the money and therefore was "accountable" for the

deposit shortage.[3] Merchant agreed with Hicks's recommendation and made the decision to terminate Jernigan. Dollar General gives as its reason for termination Jernigan's "failure to protect company assets," which is listed in Dollar General's employee handbook as an offense for which an employee can be terminated upon a first violation. Although termination for such an offense is not automatic, and although Merchant and Hicks both stated that Jernigan's prior write-up for a safe shortage was not a factor in Dollar General's decision to terminate her, Dollar General interprets its rule regarding protection of assets to make the buck stop with the last employee who handled missing money, whether or not the shortage can be proven to have been caused by that party's negligence or misconduct. Dollar General's said policy may be unwise or even unfair. The apparent design of the policy is to make an example of any employee who lets Dollar General's money or property get away. Such a policy does not violate or even implicate the ADEA.[4] After Jernigan was terminated, she was replaced by Alex Curry, who is in her twenties.

---

[3] "And, ultimately, if the bank is confirming to use we have checked all of our records, the deposit is this short, and we are taking the money from your account, the money is gone, we are not—we are not accusing someone of theft, but we are saying we've verfieid and validated who is responsible for the money. If I'm that employee and I signed for it and I seal the deposit and I walk out of the store with it, I'm—I'm responsible for it." Deposition of Larry Hicks, at page 38.

[4] Dollar General claims that Jernigan was replaced by Damian Kennedy, who was born in 1971, and is thus over 40. However, for purposes of summary judgment, the court will assume that Jernigan was in fact replaced by Curry.

**Other Employees' Cash Shortages[5]**

Atchley committed a few violations of company policy. Merchant testified that Atchley was "loose operationally" because she failed to keep merchandise stocked and often failed to properly do her paperwork. Atchley also had a practice of counting money, placing it in the deposit bag, and then leaving it unsealed so that she and cashiers could make change using the money in the bag. This was against company policy. Upon discovering this practice, Merchant gave Atchley a verbal warning.  Merchant also later gave Atchley a written warning when the safe was short $5. Atchley was in her mid to late thirties when these events occurred.[6]

Jernigan also describes an incident involving the drawer of Marquishe Akoff ("Akoff") being short $100. When Jernigan was closing the store she counted down Akoff's drawer and discovered that it was short $100. She called Atchley who admitted to her that it was she who had taken the money and not Akoff. Atchley would not tell her why she took it, only that she did. Jernigan did not report this incident to anyone because Atchley "was the manager. She said she put it back. . . . She said she took care of it." Jernigan Depo. Page 82-3. Jernigan only reported it to Trawick when

---

[5]Jernigan attempts to put forth Young and Jessica as comparators who were also involved in cash shortages but were not terminated as a result. However, the only evidence regarding these shortages is Jernigan's testimony, and she admittedly did not have personal knowledge about these events. The admissibility of this testimony will be discussed in more detail below.

[6] Atchley was 38 as of May 23, 2012, the day of her deposition.

he interviewed her regarding her own later deposit shortage. Her conversation with Trawick was roughly three weeks after the Atchley incident. Trawick claims to have no recollection of Jernigan's telling him about the Atchley incident, but for the purposes of summary judgment, the court assumes that he knew about it.

**Analysis**

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In 2009 the Supreme Court took up the issue of what a plaintiff must prove to make a case under the ADEA. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). The court held that "[a] plaintiff bringing an ADEA disparate-treatment claim must prove, by a preponderance of the evidence, that age was the **'but-for'** cause of the challenged adverse employment action." *Id.* at 167 (emphasis added). The main effect of *Gross* is that an ADEA plaintiff can no longer allege "mixed-motives." *See Ephraim v. The Pantry, Inc.*, 2012 WL 4479074 (N.D. Ala. 2012). Because Jernigan has dropped her retaliation claim, she and the court no longer face the problem of "mixed-motives."

The *Gross* decision left open the question of whether it is appropriate to apply the Title VII evidentiary framework found in

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973), to ADEA cases. *See Gross*, 557 U.S. 174, n.2.[7] Following *Gross*, the Eleventh Circuit has continued to apply *McDonnell Douglas* to ADEA cases. The Eleventh Circuit has explained:

> Because *Gross* did not specifically hold that the *McDonnell Douglas* framework does not apply in the ADEA context, and because the but-for causation standard of *Gross* is consistent with the *McDonnell Douglas* framework where the burden of persuasion to show discrimination remains at all time with the plaintiff, we will apply the *McDonnell Douglas* framework to determine whether [plaintiff] established a *prima facie* case.

*Horn v. United Parcel Serv., Inc.* 433 F. App'x 788, 793 (11th Cir. 2011). Therefore, this court will use the *McDonnell Douglas* framework to conduct its analysis.

Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case by showing that she was (1) a member of the protected age group, (2) was subjected to an adverse employment action, (3) was qualified for the job, and (4) was replaced by a younger individual. *Chapman v. AI Transport*, 229 F. 3d 1012, 1024 (11th Cir. 2000). If the plaintiff establishes a *prima facie* case, the presumption of discrimination appears, and the defendant must then articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* If defendant articulates such a reason, the

---

[7] "And the court has not definitely decided whether the evidentiary framework of *McDonnell Douglas Corp v. Green*, utilized in Title VII cases is appropriate in the ADEA context." *Id.*(internal citations omitted)

8

presumption of discrimination disappears, and plaintiff must produce evidence that would permit a reasonable factfinder to conclude that defendant's stated reason was a pretext for discrimination. *Id.* **"If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."** *Id.* at 1024-25 (emphasis added).

Dollar General denies that the "verbal counseling" constituted an adverse employment action. Doc. 18 at 22. Jernigan's complaint alleges that she "has been reprimanded and terminated when younger employees have not been reprimanded and/or suspended for the same or similar alleged offense." Doc. 1 ¶ 29. Plaintiff's brief barely mentions the April 25, 2009 write-up or verbal counseling, but it does not respond to Dollar General's argument that a reprimand does not constitute an adverse employment action. Jernigan focuses only on her termination. The court will proceed under the assumption that any claim for age discrimination in regards to the reprimand has been abandoned. It is not necessary for the court to address abandoned claims. *See Resolution Trust Corp. v. Dunmar Corp.* 43 F. 3d 587 (11th Cir. 1995).[8] Therefore, Jernigan's only claim is one

_____

[8]"In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' *Ryan v. Int'l Union of Operating Eng'rs, Local 675,* 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden upon the district court to distill every potential argument that could be made based up on the materials before it on summary judgment. *Blue Cross & Blue*

for termination as a result of her being over 40 years of age.

For the purposes of its motion, Dollar General does not contest any of the elements of Jernigan's *prima facie* case: she was part of a protected age group, she was terminated, she was qualified to do the job, and she was replaced by a younger individual. Because her *prima facie* case is established, the analysis moves to whether Dollar General has articulated a legitimate non-discriminatory reason for her termination. Dollar General maintains that Jernigan was terminated for "failing to protect the company's assets," Doc. 18 ¶ 18, on June 25, 2009 when she made a deposit that Wachovia found to be $150 short. Although Jernigan contests Dollar General's decision, Dollar General has met the low burden required in this step of the analysis. The Eleventh Circuit has referred to the employer's burden here as "exceedingly light," and the Supreme Court has said that "the defendant need not persuade the court...[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *See Tipton v. Canadian Imperial Bank of*

---

*Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp*. 43 F. 3d 587 at 599.

*Commerce*, 872 F.2d 1491 (11th Cir. 1989), and *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Dollar General has presented sufficient evidence to raise a genuine issue of fact and thus moves the analysis to the next and final step.

The burden now shifts back to Jernigan to demonstrate pretext. *See Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001). When discussing how successfully to show pretext, the Eleventh Circuit has said: "[a] plaintiff in a discrimination case based on circumstantial evidence can avoid judgment as a matter of law by ...producing evidence sufficient to discredit in the mind of a reasonable juror all of the defendant's proffered nondiscriminatory reasons for its actions." *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997). The court must not only consider the evidence plaintiff has proffered to establish her *prima facie* case but all other admissible evidence submitted in her attempt to discredit the employer's articulated reason for its adverse employment action.

Jernigan's first argument in support of her contention that she was not, in fact, terminated because of a mishandling of company assets is not only that she did not take the money but that the investigation of the incident was "inconclusive and did not establish how the loss of the money occurred." Doc. 23 at 13. Jernigan goes on to say:

> [o]ther than accepting the bank's statement
> that there was a shortage, Dollar General did

11

> nothing to investigate the teller who counted
> the money or review any other information from
> the bank to establish whether the deposit bag
> had been opened prior to Plaintiff's
> depositing the money. Dollar General does not
> challenge the fact that Plaintiff returned
> after making the deposit with a slip for the
> exact amount of money that was supposed to be
> deposited. Defendant's suggestion that the
> decision makers had a "good faith belief" that
> Plaintiff mishandled the money does not have
> to be believed by a jury in light of
> conflicting evidence **by its own investigator.**
> (See Doc. 18, p 24).

See Id. Jernigan's statements are somewhat misleading. Even if
Dollar General did not employ the procedures that Jernigan says
were called for, there was an investigation. Dollar General's
investigator was charged with the responsibility to investigate
similar incidents throughout the state. There is no indication that
he departed from his normal investigatory procedures. He was not
required to duplicate the performance of Sherlock Holmes. As part
of the investigation, Merchant questioned the Wachovia Branch
Manager regarding Wachovia's separate internal investigation.
Dollar General was not in a position to insist that its bank
conduct an investigation in accordance with what Jernigan thought
appropriate. Merchant may not have lived up to Jernigan's
standards, but Jernigan was not authorized to set the standards for
Dollar General's investigations, particularly when the
circumstances were so puzzling and unique. No one knows what
happened to the $150 or even if it ever existed. Jernigan's
complaint about "conflicting evidence" is unavailing because there

12

was no conflicting evidence. There was no "he said" "she said." Trawick did not conclude, and could not conclude, that Jernigan stole the money. However, neither did he conclude, nor could he conclude, that some Wachovia employee mishandled the money. It certainly was not possible to prove beyond a reasonable doubt that any particular person or persons committed a criminal act, and such was not required of Dollar General.

Dollar General argues that it "is well-settled in the Eleventh Circuit that an employee cannot establish pretext by challenging the sufficiency of the investigation that led to the challenged termination decision. *See Delong v. Best Buy Co.*, 211 F. App'x 856, 859 (11th Cir. 2006)." The holding of *DeLong* is informative, but Dollar General overstates it a bit. The *DeLong* court did not hold that a terminated employee can **never** question an investigation.  It only held that in the particular circumstances in *DeLong*, the plaintiff had "not shown that Best Buy did not honestly believe, following an investigation into the allegations against her, that she had on two separate occasions engaged in activities that violated the store's policies." *Id*. Therefore, *DeLong* does not stand for the proposition that Jernigan is precluded from questioning Dollar General's investigation. It only demonstrates that she must show that, following the investigation, Dollar General did not arrive at a good faith belief that she had violated company policy, wise or unwise. The Eleventh Circuit has said

"[w]hen the resulting employer's investigation...produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions–that is, to accept one as true and to reject one as fictitious–at least, as long as the choice is an honest choice." *EEOC v. Total Systems Services, Inc.*, 221 F. 3d 1171 (11th Cir. 2000). In other words, Jernigan must show what she cannot show, namely, that Dollar General's decision was not an honest one. Dollar General may have been wrong to believe Wachovia over Jernigan, that is, **if it did so**. Such a choice was not necessary, but a choice to believe Wachovia would not have been irrational.

Jernigan argues that because the investigation was inconclusive, the decision makers' "good faith belief" that Jernigan violated company policy could be disbelieved by a jury. It is true that any party can be disbelieved, no matter how far-fetched that disbelief may be, but is also true that at this point in the analysis, it is up to plaintiff to cast so much doubt on the defendant's asserted reason as to very strongly suggest that the reason was to cover up a discriminatory motive. An employer is allowed to pick between competing rational conclusions. The mere fact that this investigation was inconclusive and provided no basis for deciding exactly what happened is not enough to discredit defendant's stated reason for its decision. With Trawick's information, Hicks and Merchant determined that Jernigan was

"responsible" for the deposit and "failed to protect" it. Trawick testified that it would be unusual for him to reach a final and irrefutable conclusion. His job was to determine the facts as best he could and turn them over to HR for its final decision on what, if any, discipline was called for. There is nothing in the record to show that Trawick even knew the age of Jernigan. Jernigan does not point to anything that would establish that Dollar General's decision was not made honestly. Rule 56(c) states

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (a) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

F. R. Civ. P. Rule 56. Jernigan has not pointed to a specific part of the record that would advance her argument and that would suggest that Dollar General's decision was not made in good faith. Rule 56(c) also goes on to say that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Jernigan has not pointed to anything regarding Jernigan's termination decision that the court is required to consider and has not considered.

Jernigan lastly asserts that Dollar General treated comparators differently and that these disparate treatments are evidence of pretext. Regarding comparators, the Eleventh Circuit has said: "[t]he most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. We require that the **quantity and quality of the comparator's misconduct be nearly identical** to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)(internal citations omitted)(emphasis added). Jernigan also must demonstrate that the decision maker knew of the comparators' prior similar acts. *See Jones v. Gerwens*, 874 F. 2d 1534, 1542 (11th Cir. 1989).

Jernigan argues that her supervisor, Leila Atchley, is a comparator because she mishandled funds without being terminated. This argument is based on Merchant's deposition testimony that Atchley was "loose operationally" and was reprimanded for leaving deposit bags open. However, Atchley's offenses are not "nearly identical" to Jernigan's failure to discharge her responsibility never to touch money that goes missing. Merchant elaborates that when she used the words "loose operationally," she was referring to Atchley's failure to keep merchandise well stocked and to do proper filing, neither of which is what caused Jernigan's discharge. Merchant also conceded that Atchley had mishandled deposit bags.

16

Atchley would count the money for the deposit, then leave the unsealed bag in the safe, so that she could go back to the bag and make proper change using the money inside. Merchant reprimanded her because this was not the proper procedure, but no money ever disappeared or evaporated as a result. Again, this does not match Jernigan's alleged violation. Atchley was also reprimanded when the safe was short $5. A $5 safe shortage is not the same as Jernigan's alleged offense in which she made a deposit that the bank reported to be $150 short. Instead, it is more analogous to the incident in which Jernigan was reprimanded for half of a $30 safe shortage. The punishment Atchley received for a safe shortage, a mere reprimand, was identical to the discipline that Jernigan received for a safe shortage, a reprimand.

There is, of course, the incident in which Jernigan counted down Akoff's drawer, found it to be $100 short, and discovered that Atchley had taken the money. Although what Atchley did was no doubt against company policy[9], it is not "nearly identical" to the Jernigan incident. Atchley was manager, while Jernigan was a third key manager. More importantly, Jernigan did not alert any decision maker, about the Atchley "borrowing" of company money. Jernigan did not tell Trawick about the Atchley incident until three weeks later when he interviewed her about her own shortage.  He was not a decision maker and his investigation was not about any Atchley

_____

[9] Jernigan does not point to a company policy which this act violates.

17

shortage because there was no Atchley shortage. He performs investigations only when a district manager or the corporate office calls upon him to investigate a particular cash shortage. He does not make personnel decisions. Anybody who makes decisions regarding alleged violations of company policy must be aware of the violation for it to be an incident suitable for comparing. *See Jones v. Gerwens*, 874 F. 2d 1534, 1542 (11th Cir. 1989)(stating that plaintiff must show that the decision maker **knew** of the comparators' prior similar acts). Trawick was not the decision maker or interpreter of company policy.

Jernigan enigmatically suggests that Young and Jessica (last name unknown) are comparators.[10] However, none of the information regarding any alleged offenses by these two fellow employees is based on personal knowledge. Jernigan testified that she was not at the store when either Young or Jessica violated policy, and that she only knew what Young and Jessica had told her. Rule 56 requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. Rule 56(c)(4). Jernigan's testimony does not meet this standard.

---

[10] Jernigan's argument regarding these employees follows in its entirety: "The comparative evidence of younger employees' not being terminated for mishandling company assets or money is further evidence of pretext. Plaintiff testified Faye Young, Jessica and Marquishe all had shortages at the same store location which did not result in termination." Doc 23 at page 13.

Therefore, the court will not consider it. The record gives no other account of these supposed incidents. Jernigan even deposed Young and did not ask her about any such incident. Although facts at this stage are to be viewed in the light most favorable to the plaintiff, "a court is not required to accept as true testimony that is not based on personal knowledge." *Corwin v. Walt Disney Co.*, 475 F.3d 1239 (11th Cir. 2007).

Jernigan argues that the hearsay testimony about Dollar General's treatment of Young and Jessica is admissible because "evidence may be considered on a motion for summary judgment if the statement could be reduced to admissible evidence at trial." *Macuba v. Deboer*, 193 F. 3d 1316, 1323 (11th Cir. 1999). However, *Macuba* does not help her argument. In fact, it hurts it. In *Macuba*, the Eleventh Circuit found that the lower court **erred in admitting statements made by a witness without personal knowledge**. *Id.* The court went on to explain that in order for such statements to be admissible, they would have to be admissible at trial for some purpose. "For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence)." *Id.* at 1323-1324. Jernigan's hearsay regarding Young and Jessica is offered to prove the truth of the matter asserted, and is thus inadmissible.

Jernigan also argues that Merchant's friendship with Atchley evidences pretext. Merchant admittedly was a decision maker. Jernigan says:

> Although Atchley was not the decision maker in Plaintiff's termination, her use of negative, age-based comments and her friendship with Merchant provide evidence to support Plaintiff's position, "I was just the oldest one working there and that's why they didn't want me there." (Plaintiff, page 141).

Doc. 23 at page 16. This is the extent of Jernigan's argument regarding the significance of Merchant and Atchley's friendship. She cites no authority for the proposition that a decision maker's friendship with another employee is imputed to the decision maker. If Atchley at 38 years of age suggested that Jernigan at 50 was too old to handle the job, that fact does not establish that Merchant wanted to fire Jernigan because of her age.

Because this court in *Gunter v. Coca Cola*, 2:11-cv-0522-WMA, recently found enough evidence of pretext to create a jury question on the issue, the extent and dimensions of the evidence in *Gunter* far outdo the thin and watery evidence in this case.

Jernigan has simply not demonstrated that Dollar General's given reason for her termination, namely, a "failure to protect company assets" when she made the June 25, 2009 deposit, was pretext to cover age discrimination. Perhaps Dollar General could and should devise a better rule for accomplishing its purpose, but this court is not called upon to judge the fairness of a policy not

facially appearing to discriminate. Dollar General's motion for summary judgment will be granted by separate order.

DONE this 31st day of January, 2013.


WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE